**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| IN RE: | : | |
| | : | **Chapter 7** |
| JONATHAN A GORDON, | : | |
| | : | **Case No. 25-15216-pmm** |
| Debtor. | : | |
| | : | |
| ——————————————— | : | |
| | : | |
| RUSSELL KRUEGER | : | |
| & SARAH KRUEGER, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | **Adversary No. 26-_____** |
| JONATHAN A. GORDON, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**COMPLAINT FOR NON-DISCHARGEABILITY UNDER**
**11 U.S.C. § 523(a)(2)(A)**

AND NOW COMES Russell Krueger and Sarah Krueger, by and through the undersigned counsel, Todd A. King and Bethany A. Carter of Salzmann Hughes, PC, file this Complaint for Non-Dischargeability under 11 U.S.C. § 523(a)(2)(A) against Jonathan A. Gordon, and aver as follows:

**THE PARTIES**

1. Russell and Sarah Krueger (the "Kruegers") are adult individuals presently residing at 10 Deborah Trail, Fairfield, Pennsylvania 17320.

2. Jonathan A. Gordon (the "Defendant") is an adult individual residing at 334 Old Blue Rock Road, Millersville, PA 17551.

1

3.     The Kruegers are named creditors in Defendant's bankruptcy proceedings.

## JURISDICTION, VENUE, & STANDING

4.     This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157(b)(2)(I), and 1334, and 11 U.S.C. § 523.

5.     This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I),

6.     Venue is properly in the Eastern District of Pennsylvania under 28 U.S.C. § 1409(a).

## PROCEDURAL BACKGROUND

7.     On December 23, 2025, the Defendant filed a Voluntary Petition for individual relief pursuant to Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

8.     The first Meeting of Creditors was scheduled for January 23, 2026, but then continued to February 3, 2026, because of Defendant's failure to timely provide documentation.

9.     On February 3, 2026, the Trustee gave another Notice of Continued Meeting of Creditors to be held March 30, 2026, and requested that Defendant provide his tax returns, business information, and corrected tax schedules.

10.     The deadline for objecting to discharge is March 24, 2026.

## FACTUAL ALLEGATIONS

### *Defendant's Conduct Creating the Nondischargeable Debt*

11.     Prior to filing his bankruptcy petition, Defendant was an associate broker and a realtor who also purchased and renovated homes through his Pennsylvania Limited Liability Company, M&J Property Holdings LLC.

12.     Defendant has been a licensed real estate agent for approximately 20 years and a real estate broker for 5 to 7 years.

13.     M&J Property Holdings LLC ("M&J") is a Pennsylvania Limited Liability Company owned by Defendant.

14.     On or around July 16, 2021, Defendant, through M&J, purchased the property located at 10 Deborah Trail, Fairfield, Pennsylvania 17320 (the "Property").

15.     Shortly after purchasing the Property, Defendant contacted a contractor, Paul Melville, general contractor and the owner of Paul Melville & Sons Home Services ("Mr. Melville"), to visit the property and ascertain what work needed to be done.

16.     Mr. Melville inspected the Property and informed Defendant that he discovered large amounts of mold throughout the house, which would need to be removed by a mold professional; Mr. Melville told Defendant that he does not perform mold remediation work.

17.     Instead of dealing with the mold issue, Defendant paid contractors, including Mr. Melville, to remove and replace any items that appeared to have mold contamination, including doors, baseboards, insulation, and drywall, to conceal the mold issue from prospective buyers.

18.     Defendant's knowledge of the mold was affirmed when another couple expressed interest in purchasing the property, and had an inspection performed by Viking Inspections, which provided a report dated November 1, 2021 ("Mold Report").

19.     The Mold Report revealed mold growth on the drywall and insulation under the kitchen sink and hallway bathroom sink, and in various places in the basement.

20.     The previously interested couple backed out of the sale after seeing the inspection report.

21.     The Kruegers entered into a standard agreement for sale of real estate ("Agreement of Sale") with M&J to purchase the property at 10 Deborah Trail, Fairfield, Pennsylvania 17320 (the "Property") on January 29, 2022.

3

22.     Prior to executing the Agreement of Sale, Defendant, on behalf of M&J, executed and provided a Seller's Property Disclosure Statement to the Kruegers ("Seller's Disclosure Statement").

23.     The Seller's Disclosure Statement indicated that Defendant was unaware of any past or present water leakage, unaware of any repairs or other attempts to control any water or dampness problem, unawareness of any tests for mold, fungi, or indoor air quality, and unawareness of any efforts to control or remediate mold or mold-like substances.

24.     The Seller's Disclosure Statement only stated, "Bathroom upstairs leaked into kitchen. Repaired professionally."

25.     The Disclosure Statement did not acknowledge the work that Mr. Melville performed in removing the mold-contaminated drywall and insulation from the Property during M&J's ownership; additionally, the Disclosure Statement did not acknowledge the presence of mold identified in the Mold Report.

26.     Defendant finally produced the Mold Report during discovery but claimed he had never read the report and had instead deleted it after receiving it via email.

27.     Rather than acknowledge what was in the Mold Report, Defendant blamed Viking Inspections for the mold issue because they turned on the water in the house and caused water damage.

28.     Defendant's claim that the water was supposed to be off is contradicted by emails between Defendant and Viking Inspections, with Defendant confirming that the water was on for the inspection.

29.     The Kruegers obtained a home inspection by Gettysburg Home Inspection for the Property prior to their purchase, and a report dated February 8, 2022 ("Inspection Report").

4

30. The Defendant told the Kruegers that there was a small amount of mold and water damage in the house due to a small bathroom leak that occurred a few months prior.

31. The Inspection Report prompted the parties (Defendant and the Kruegers) to execute a Change in Terms Addendum to the Agreement of Sale on or around February 14, 2022 ("Change in Terms Addendum"); the Change in Terms Addendum stated that Defendant was to treat and mitigate the mold in the basement and bathroom no later than seven (7) days prior to settlement.

32. During pre-settlement walk-through on March 14, 2022, the Kruegers discovered that the mold issues were not remedied as contemplated in the Change in Terms Addendum.

33. Defendant pre-signed all documents and did not appear at the settlement location.

34. Before closing, the Kruegers contacted Defendant regarding his failure to remedy the mold issues found during inspection.

35. Defendant promised and reassured the Kruegers that he would make sure that the mold issue was remedied.

36. After discussion, the Kruegers and Defendant signed a Pre-Settlement Walkthrough Report dated March 14, 2022, which indicated that Defendant would have ten (10) days after settlement to complete the mold repairs.

37. The parties settled as planned on March 14, 2022.

38. Ten days passed after the Settlement, and the repairs were not made by Defendant.

39. Since Defendant failed to comply with the Pre-Settlement Walkthrough Report, or provide any other assistance, the Kruegers immediately began taking steps to remediate the mold to make the Property habitable.

40.     The Kruegers hired Rainbow International Restoration of Waynesboro, Pennsylvania ("Rainbow") to conduct mold testing, which showed that the mold issue was not limited to the couple areas noted in the Inspection Report, but was prevalent in every room at abnormally high levels; mold was found under the new carpets, behind freshly painted drywall, and had already penetrated the new drywall.

41.     The mold levels were so high that the home was deemed unsafe for the Kruegers to move into the Property.

42.     As a result, Russell lived with his parents while Sarah moved into an apartment while the repairs were being completed by Rainbow.

43.     Rainbow provided three quotes to the Kruegers, including a quote for mold remediation, a quote for demolition, and a quote for rebuilding the house following the necessary demolition and mold cleaning.

44.     Rainbow estimated the cost of mold cleaning as $55,304.19.

45.     Rainbow estimated the cost of demolition as $34,231.61.

46.     Rainbow estimated the cost of rebuild as $81,473.11.

47.     The Kruegers ultimately paid Rainbow approximately $83,360.59 for demolition and cleaning/remediation work.

48.     The Kruegers have completed some of the restoration work themselves and with the help of contractors, but they are still in the process of rebuilding their home due to the cost.

49.     The Kruegers would not have purchased the Property if they had received accurate information regarding both the presence and extensiveness of the mold at the Property, which Defendant had concealed with new drywall and fresh paint; Defendant also explained

6

away any mold found in the inspection report as being from the leak supposedly caused by Viking Inspections.

50.     Further, even after discovery, there is no evidence that Defendant took even a single step to try and address the mold issue.

51.     The Kruegers would not have proceeded with the Closing if Defendant had not agreed to fix/remedy the mold discovered at the Property.

52.     On November 10, 2022, the Kruegers filed their Complaint in the Adams County Court of Common Pleas against Defendant, which contained four counts: Count I–Violation of the Real Estate Seller Disclosure Law, Count II–Unfair Trade Practice Consumer Protection Law, Count III–Breach of Contract, and Count IV–Fraudulent Misrepresentation. *See* Complaint, attached as Exhibit A.

53.     In pursuing litigation in the state court, and litigation in this court, the Kruegers have incurred additional costs and fees; they have paid approximately $55,000 in legal fees and costs, which continues to increase.

54.     On October 29, 2025, Judge Michael George issued an Order granting Plaintiff's Motion for Summary Judgment on all four counts, including fraudulent misrepresentation, and an Opinion, attached hereto as Exhibit B.

55.     The trial court scheduled a hearing on damages for Counts I and II of the Complaint, and a jury trial on the issue of damages on Counts III and IV of the Complaint; the hearing was ultimately scheduled for January 7, 2026, and the jury trial was scheduled for March 8, 2026. *See* Exhibit B, Order of Court.

56.     The Defendant did not appeal the decision of the trial court.

57.     The Defendant filed for Bankruptcy on December 23, 2025, which stayed the matter; the trial court cancelled the scheduled hearing and jury trial.

58.     The deadline for objecting to discharge is March 24, 2026; therefore, the Kruegers are filing this complaint to have the Defendant's debt declared nondischargeable based on the fraud claims.

## COUNT I: NON-DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A)

**I.      *The Kruegers Established that Defendant Committed Fraud by Clear & Convincing Evidence in the Adams County Court of Commons Pleas.***

59.     The Kruegers repeat and re-allege every statement contained in the preceding paragraphs as if fully set forth herein.

60.     Bankruptcy Code 523(a)(2)(A) provides that an individual Defendant cannot discharge any debt for money obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

61.     The standard of proof for fraud under Section 523(a)(2)(A) is the preponderance of the evidence standard. *See Grogan v. Garner*, 498 U.S. 279 (1991).

62.     Under Pennsylvania law, "fraudulent (or intentional) misrepresentation requires the plaintiff to prove six elements: (1) a representation; (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or reckless disregard as to whether it is true or false; (4) with the intent to mislead another person into relying on it; (5) justifiable reliance; and (6) an injury proximately caused by the reliance." *Gregg v. Ameriprise Fin. Inc.*, 245 A.3d 636, 646 (Pa. 2021) (*citing Bortz v. Noon*, 729 A.3d 555, 560 (Pa. 1999)).

63.     Under Pennsylvania law, the standard of proof for common law fraud is the clear and convincing evidence standard, which is the highest burden under Pennsylvania civil law. *Weissberger v. Myers*, 90 A.3d 730, 735 (Pa. Super. 2014) (*citing Spaw v. Springer*, 715 A.2d

1188, 1189 (Pa. Super. 1998) (Clear and convincing evidence "requires that the factfinder be able to come to clear conviction, without hesitancy, of the truth of the precise fact in issue.")).

64.     Defendant represented that there was no mold issue with the Property, which was material to the transaction because the Kruegers would not have purchased the Property had Defendant fully disclosed the extent of the mold at the Property.

65.     The Kruegers justifiably relied on Defendant's lie that the mold was from a small, isolated bathroom plumbing issue that was professionally repaired.

66.     The Kruegers had no reason to believe that mold covered every room in the entire house.

67.     Defendant also lied by promising to fix the mold issue in the Change in Terms Agreement and Pre-Settlement Walkthrough Report.

68.     The Kruegers also justifiably relied on Defendant's promises to fix the mold issue because Defendant is an experienced, licensed realtor and real estate broker, and they reasonably believed that he would conduct his business in an honest, non-fraudulent manner. *See* 49 Pa. Code 35.292 (providing that real estate licensees owe duties to consumers, such as dealing honestly and in good faith).

69.     The statement that the mold was from a small leak caused a few months prior to the sale was false and misleading and Defendant made it with the intent of misleading and causing the Kruegers to rely on the statement.

70.     The Defendant practically did and said everything he could to get the Kruegers to proceed with purchasing the home after mold was discovered in a few areas of the house.

71.     Defendant knew that the entire house was covered in mold because, prior to entering the Agreement of Sale with the Kruegers, Defendant hired a contractor to remove and

9

cover up mold-infested parts of the Property and was notified of the presence of mold in the

Mold Report, which he did not produce until discovery.

72.     The fact that the Kruegers proved fraud by the clear and convincing evidence

standard in the trial court establishes that they met their burden of proving fraud by the lower

preponderance of the evidence standard required to prove fraud under Section 523(a)(2)(A).

73.     The Defendant's fraudulent conduct is the proximate cause of substantial

monetary harm to the Plaintiffs; the cost of treating the mold issue and renovating the Property is

approximately $170,000.

74.     Therefore, Defendant's debt to the Kruegers is non-dischargeable under 11 U.S.C.

§ 523(a)(2)(A) as a debt obtained by fraud.

**II.     Collateral Estoppel Bars Re-Litigation of the Issue of Fraud in the Bankruptcy Court.**

75.     Here, the issue of whether the debt to the Kruegers was obtained by fraud was

involved in the state court action.

76.     Under Pennsylvania law, collateral estoppel applies when: (1) an issue is identical

to one that was presented in a prior case (2) there is a final judgment on the merits of the issue in

the prior case; (3) the party against whom the doctrine of collateral estoppel is asserted was a

party in, or in privity with a party in, the prior action; (4) the party against whom the doctrine is

asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the

determination in the prior proceeding was essential to the judgment. *See In re* Jacobs, 381 B.R.

128, 143 (E.D. Pa. Bank. 2008) (*citing Cohen v. Workers' Comp. Appeal Bd. (City of*

*Philadelphia*), 909 A.2d 1261, 1264 (PA. 2006)); *see also* 28 U.S.C. § 1738.

77.     No unfairness would arise from the offensive use of collateral estoppel in this

adversary complaint based upon a civil verdict of fraud because the burden of proof for common

10

law fraud in Pennsylvania satisfies the burden of proof required to prove fraud under Section

523(a)(2)(A) of the Bankruptcy Code, and the Plaintiff had every incentive to present a vigorous

defense due to the size of the money judgment that the Kruegers are seeking. *See Office of*

*Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 52–53 (Pa. 2007); see also *Grogan v. Garner*,

498 U.S. 279, 285, 289 (1991) (providing that burden of proof for fraud under Section

523(a)(2)(A) is the preponderance of the evidence standard, which permits creditors who have

reduced their fraud claims to judgments to receive an exception from discharge).

78.     The issue of fraud was presented in the state court case because "fraudulent

misrepresentation" was a cause of action in the Kruegers' Complaint. *See* Exhibit A.

79.     There is a final judgment on the merits of the issue in the prior case because the

trial court's finding that Defendant committed a fraud is final. *See* Exhibit B.

80.     The same parties, the Defendant Jonathan Gordon and Plaintiffs Russell Krueger

and Sarah Kruegr, are involved in both proceedings.

81.     Given the length of the proceedings (a final judgment was issued three years after

the proceedings commenced), and the fact that Defendant, who was represented, did not file an

appeal, Defendant had a full and fair opportunity to litigate the issue of fraud in state court.

82.     The issue of fraud was essential to the final judgment because it was a cause of

action.

83.     Although the issue of damages remains to be determined, there is no question that

Defendant committed fraud.

11

### *III. Request to Permit State Court to Liquidate Damages*

84.     A Bankruptcy Court may abstain from hearing any proceeding arising under title 11 or arising in or related to a case under title 11 "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1).

85.     Permitting the Adams County Court of Common Pleas (the "State Court") to liquidate the damages is in the interest of justice and the interest of comity in this case, as the state trial court has already issued a final judgment in favor of plaintiffs, and has ordered that a jury trial be held solely on the issue of damages.

86.     At this point, the state court is better equipped to liquidate damages and schedule a trial on damages at the parties' convenience.

87.     The Eastern District Bankruptcy Court is also geographically inconvenient to the Plaintiffs, who reside in Fairfield, Adams County, Pennsylvania.

88.     Furthermore, allowing the state court to liquidate damages would not have an adverse effect on the Defendant's bankruptcy proceedings, and will allow this Court to efficiently complete Defendant's bankruptcy proceedings.

WHEREFORE, the Kruegers have established that (1) the Defendant obtained his debt to the Kruegers through fraudulent conduct; (2) the doctrine of collateral estoppel bars the relitigation of the fraud claim in the Bankruptcy Court; and (3) that Defendant should not be able to obtain a discharge of his debt owed to the Kruegers pursuant to Bankruptcy Code Section 523(a)(2)(A).

## RELIEF REQUESTED

**WHEREFORE**, the Kruegers respectfully request that this Court enter a Judgment against the Defendant

(i)     determining that collateral estoppel bars re-litigation of the issue of whether Defendant's debt to Plaintiffs was obtained by fraud; and

(ii)    determining that the debt owed to the Kruegers is nondischargeable under Bankruptcy Code § 523(a)(2)(A); and

(iii)   permitting the Adams County Court of Common Pleas to liquidate the damages owed by Defendant, as permitted under 28 U.S.C. § 1334(c)(1); and

(iv)    determining that the Kruegers are entitled to receive attorneys' fees and costs for bringing this adversary complaint against Defendant; and

(v)      granting any and all such other further relief that the Court deems just and proper.

Dated: March 24, 2026

Respectfully Submitted,

SALZMANN HUGHES, P.C.

By: /s/ Bethany A. Carter
Todd A. King
PA Attorney ID: 309197
tking@salzmannhughes.com
Bethany A. Carter
PA Attorney ID: 338128
bcarter@salzmannhughes.com
112 Baltimore Street, Suite 1
Gettysburg, PA 17325
717.334.9278
*Counsel for the Plaintiffs*
*Russell Krueger & Sarah Krueger*

13

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| IN RE: | : | |
| | : | **Chapter 7** |
| **JONATHAN A GORDON,** | : | |
| | : | **Case No. 25-15216-pmm** |
| **Debtor.** | : | |
| | : | |
| | : | |
| _____ | : | |
| | : | |
| **RUSSELL KRUEGER** | : | |
| **& SARAH KRUEGER,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | **Adversary No. 26-_____** |
| **JONATHAN A. GORDON,** | : | |
| | : | |
| **Defendant.** | : | |

**CERTIFICATE OF SERVICE**

I, Bethany A. Carter, hereby certify that I served a true and correct copy of the foregoing document upon the following parties in the manner indicated:

CM/ECF:

Brent C. Diefenderfer, Esquire (*Counsel for Defendant*)
CGA Law Firm, P.C.
135 N. George Street
York, PA 17401

Christine C. Shubert, Esquire (Chapter 7 Trustee)
821 Wesley Avenue
Ocean City, NJ 08226

United States Trustee
Office of United States Trustee
Robert N.C. Nix Federal Building
900 Market Street
Suite 320
Philadelphia, PA 19107

14

Bret P. Shaffer, Esquire (*Counsel for Creditor Members 1ˢᵗ Federal Credit Union*)
Serratelli Schiffman Shaffer P.C.
2805 Old Post Road, Suite 120
Harrisburg, PA 17110

Date: 3/24/2026

By: /s/ Bethany A. Carter